**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **FIFTH THIRD BANK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Cause No.** |
| ) | |
| **THRUSH INVESTMENT COMPANY, INC.,** ) | FILED: MAY 1, 2008 |
| **GEORGE H. THRUSH, III, DAVID L. CHASE,** ) | 08cv2497 j. n. |
| **WILLIAM J. WOLK and RICHARD H. LILLIE, JR.)** | JUDGE KENNELLY |
| ) | MAG. JUDGE ASHMAN |
| **Defendants,** ) | |

<u>**COMPLAINT**</u>

Fifth Third Bank, a Michigan Banking Corporation (herein, "Fifth Third"), by its attorneys, John K. Kallman and Kenneth Hartmann, for its Complaint against defendants Thrush Investment Company, Inc. (herein, "Borrower"), George H. Thrush, III (herein, "Thrush"), David L. Chase (herein, "Chase"), William J. Wolk (herein, "Wolk") and Richard H. Lillie, Jr. (herein, "Lillie") states as follows:

<u>**JURISDICTION AND VENUE**</u>

1. Fifth Third is a Michigan Banking Corporation having its principal place of business in Cincinnati, Ohio. Fifth Third has a place of business in Chicago, Cook County, Illinois and the claims involved in this case arose out of a loan made by Fifth Third from that place of business.

2. Defendant Borrower is an Illinois corporation having its principal place of business in Chicago, Illinois.

3. Defendant George H. Thrush is a citizen of Florida, residing in Boca Grande, Florida.

4. Defendant Chase is a citizen of Illinois, residing in Chicago, Illinois.

5.    Defendant Wolk is a citizen of Illinois, residing in Chicago, Illinois.

6.    Defendant Lillie is a citizen of Illinois, residing in Chicago, Illinois.

7.    This case involves a loan made by Fifth Third in the City of Chicago.  The loan documents specifically provide that the Federal court in the County where Fifth Third is located shall have exclusive jurisdiction over all matters arising under such loan documents.

8.    The amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000, and this court has diversity jurisdiction under 28 U.S.C. 1332.

9.    Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District, and all defendants except Thrush reside in this District.

## COUNT I - ON A REVOLVING NOTE

10.    On or about August 1, 2006, Borrower executed and delivered to Fifth Third a Revolving Note, evidencing a promise to pay to Fifth Third on or before August 1, 2007 the principal amount of up to $3,750,000, with interest at the rate established by Fifth Third from time to time at its principal office as its "Prime Rate."  A true and correct copy of the Revolving Note is attached hereto as Exhibit A.  In August, 2007, Fifth Third agreed to extend the maturity date of such Note to November 1, 2007, and in October, 2007, Fifth Third agreed to extend the maturity date of such Note to January 31, 2008.

11.    Borrower has not repaid the amount due under the Revolving Note and it is overdue and in default.

12.    As of May 1, 2008, there is due under the Revolving Note the principal amount of $1,527,369.77, together with accrued interest in the amount of $6,269.18, and plus Fifth Third's costs, expenses and attorneys' fees as provided by the Revolving Note.

complaint_5108.wpd

WHEREFORE, Fifth Third demands judgment against Borrower for $1,533,638.95, or such greater sum as is shown due at the entry of Judgment, plus its costs, expenses and attorneys' fees.

## COUNT II - AGAINST THRUSH ON A GUARANTY

13.   On or about May 15, 2007, Thrush executed and delivered to Fifth Third a Continuing Guaranty Agreement (the "Thrush Guaranty"), a true and correct copy of which is attached hereto as Exhibit B.

14.   Under such Thrush Guaranty, Thrush guarantied full and prompt payment and performance when due of any and all loans, advances and indebtedness of Borrower to Fifth Third, but limited to 25% of all such loans, advances and indebtedness.

15.   Borrower owes Fifth Third, as of May 1, 2008, the sum of $1,533,638.95, as alleged in Count I hereof.

16.   Demand has been made upon Thrush to pay the portion of such amount due as is guarantied by him, and Thrush has failed and refused to do so.

WHEREFORE, Fifth Third demands judgment against Thrush for $383,409.74, or such greater sum as is shown due at the entry of Judgment, plus its costs, expenses and attorneys' fees.

## COUNT III - AGAINST CHASE ON A GUARANTY

13.   On or about May 15, 2007, Chase executed and delivered to Fifth Third a Continuing Guaranty Agreement (the "Chase Guaranty"), a true and correct copy of which is attached hereto as Exhibit C.

complaint_5108.wpd

14.  Under such Chase Guaranty, Chase guarantied full and prompt payment and performance when due of any and all loans, advances and indebtedness of Borrower to Fifth Third, but limited to 25% of all such loans, advances and indebtedness.

15.  Borrower owes Fifth Third, as of May 1, 2008, the sum of $1,533,638.95, as alleged in Count I hereof.

16.  Demand has been made upon Chase to pay the portion of such amount due as is guarantied by him, and Chase has failed and refused to do so.

WHEREFORE, Fifth Third demands judgment against Chase for $383,409.74, or such greater sum as is shown due at the entry of Judgment, plus its costs, expenses and attorneys' fees.

## COUNT IV - AGAINST WOLK ON A GUARANTY

13.  On or about May 15, 2007, Wolk executed and delivered to Fifth Third a Continuing Guaranty Agreement (the "Wolk Guaranty"), a true and correct copy of which is attached hereto as Exhibit D.

14.  Under such Wolk Guaranty, Wolk guarantied full and prompt payment and performance when due of any and all loans, advances and indebtedness of Borrower to Fifth Third, but limited to 25% of all such loans, advances and indebtedness.

15.  Borrower owes Fifth Third, as of May 1, 2008, the sum of $1,533,638.95, as alleged in Count I hereof.

16.  Demand has been made upon Wolk to pay the portion of such amount due as is guarantied by him, and Wolk has failed and refused to do so.

WHEREFORE, Fifth Third demands judgment against Wolk for $383,409.74, or such greater sum as is shown due at the entry of Judgment, plus its costs, expenses and attorneys' fees.

complaint_5108.wpd

## <u>COUNT V - AGAINST LILLIE ON A GUARANTY</u>

13.   On or about May 15, 2007, Lillie executed and delivered to Fifth Third a Continuing Guaranty Agreement (the "Lillie Guaranty"), a true and correct copy of which is attached hereto as Exhibit E.

14.   Under such Lillie Guaranty, Lillie guarantied full and prompt payment and performance when due of any and all loans, advances and indebtedness of Borrower to Fifth Third, but limited to 25% of all such loans, advances and indebtedness.

15.   Borrower owes Fifth Third, as of May 1, 2008, the sum of $1,533,638.95, as alleged in Count I hereof.

16.   Demand has been made upon Lillie to pay the portion of such amount due as is guarantied by him, and Lillie has failed and refused to do so.

WHEREFORE, Fifth Third demands judgment against Lillie for $383,409.74, or such greater sum as is shown due at the entry of Judgment, plus its costs, expenses and attorneys' fees.


Dated, this May 1, 2008:


_____/s/ John K. Kallman_____

John K. Kallman
221 North LaSalle Street
Suite 1200
Chicago, IL 60601
(312) 578-1515
jkkallman@sbcglobal.net


Kenneth Hartmann
330 West State Street
Suite 200
Geneva, IL 60134
(630) 845-4051
khartmannlaw@sbcglobal.net

complaint_5108.wpd

08CV2497 J. N.
JUDGE KENNELLY
MAG. JUDGE ASHMAN

023 - FTCH

## ⅗ Fifth Third Bank

## Revolving Note

OFFICER No. 02220                                      NOTE No. 0900786252-00018 |75|83|67
$3,750,000.00                                          August 1, 2006
                                                       (Effective Date)

1.  **PROMISE TO PAY.** On or before August 1, 2007 (the "Maturity Date"), the undersigned, Thrush Investment Company, Inc., an Illinois corporation located at 357 West Chicago Avenue, Chicago, Cook County, Illinois 60610 ("Borrower") for value received, hereby promises to pay to the order of Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp (together with its successors and assigns, the "Lender") the sum of Three Million Seven Hundred Fifty Thousand and 00/100 Dollars ($3,750,000.00) (the "Borrowing"), plus interest as provided herein, less such amounts as shall have been repaid in accordance with this Note. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time. As used herein, "Local Time" means the time at the office of Lender specified in this Note.

Borrower may utilize up to $ 3,000,000.00 of the proceeds of this Note to issue letters of credit from time to time. Any amounts advanced hereunder for the issuance of letters of credit shall be reserved from the maximum amount of the Borrowing.

The remaining portion of $750,000.00 will be available for principal draws.

Principal and interest payments shall be made at Lender's address above unless otherwise designated by Lender in writing. Each payment hereunder shall be applied first to advanced costs, charges and fees, then to accrued interest, and then to principal, which will be repaid in inverse chronological order of maturity.

Lender, in its reasonable discretion, may loan hereunder to Borrower on a revolving basis such amounts as may from time to time be requested by Borrower, provided that: (a) the aggregate principal amount borrowed hereunder at any time shall not exceed the Borrowing, and (b) no Event of Default shall exist or be caused thereby. The entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder, shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of this Note.

The principal sum outstanding shall bear interest at a floating rate per annum equal to the rate of interest per annum established from time to time by Fifth Third Bank at its principal office as its "Prime Rate", whether or not Fifth Third Bank shall at times lend to borrowers at lower rates of interest or, if there is no such prime rate, then such other rate as may be substituted by Fifth Third Bank for the prime rate (the "Interest Rate"). In the event of a change in said Prime Rate, the Interest Rate shall be changed immediately to such new Prime Rate. Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed, and shall be payable on the 1st day of each calendar month beginning on September 1, 2006.

Notwithstanding any provision to the contrary in this Note, in no event shall the interest rate charged on the Borrowing exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Note, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

2.  **USE OF PROCEEDS.** Borrower certifies that the proceeds of this loan are to be used for business purposes.



EXHIBIT A

3.    RENEWAL.  This Note is issued, not as a payment toward, but as a continuation of, the obligations of Borrower to Lender pursuant to that certain note dated May 1, 2005, in the principal amount of $3,750,000.00 (together with all prior amendments thereto or restatements thereof the "Prior Note"). Borrower hereby acknowledges that there has been up to a 90-day extension of this Note granted by Lender since the Maturity Date of the Prior Note and Borrower ratifies such extension granted by Lender in all respects. Accordingly, this Note shall not be construed as a novation or extinguishment of, the obligations arising under the Prior Note, and its issuance shall not affect the priority of any security interest granted in connection with the Prior Note.

4.    NOTE PROCESSING FEE.  Lender may charge, and Borrower agrees to pay on the above Effective Date, a note processing fee in the amount of $900.00.

5.    REPRESENTATIONS AND WARRANTIES.  Borrower hereby warrants and represents to Lender the following:

(a)    Organization and Qualification.  Borrower is duly organized, validly existing and in good standing under the laws of the State of its incorporation, has the power and authority to carry on its business and to enter into and perform all documents relating to this loan transaction, and is qualified and licensed to do business in each jurisdiction in which such qualification or licensing is required.  All information provided to Lender with respect to Borrower and its operations is true and correct.

(b)    Due Authorization.  The execution, delivery and performance by Borrower of the Loan Documents have been duly authorized by all necessary corporate action, and shall not contravene any law or any governmental rule or order binding on Borrower, or the articles of incorporation and code of regulations or by-laws of Borrower, nor violate any agreement or instrument by which Borrower is bound nor result in the creation of a Lien on any assets of Borrower except the Lien granted to Lender herein.  Borrower has duly executed and delivered to Lender the Loan Documents and they are valid and binding obligations of Borrower enforceable according to their respective terms, except as limited by equitable principles and by bankruptcy, insolvency or similar laws affecting the rights of creditors generally.  No notice to, or consent by, any governmental body is needed in connection with this transaction.

(c)    Litigation.  There are no suits or proceedings pending or threatened against or affecting Borrower, and no proceedings before any governmental body are pending or threatened against Borrower except as otherwise specifically disclosed to Lender on or prior to the Effective Date or as set forth on any Litigation Exhibit which may be attached hereto.

(d)    Business.  Borrower is not a party to or subject to any agreement or restriction that may have a material adverse effect on Borrower's business, properties or prospects.  Borrower has all franchises, authorizations, patents, trademarks, copyrights and other rights necessary to advantageously conduct its business.  They are all in full force and effect and are not in known conflict with the rights of others.

(e)    Licenses, etc.  Borrower has obtained any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business.  Borrower possesses adequate licenses, patents, patent applications, copyrights, trademarks, trademark applications, and trade names to continue to conduct its business as heretofore conducted by it, without any conflict with the rights of any other person or entity.  All of the foregoing are in full force and effect and none of the foregoing are in known conflict with the rights of others.

(f)    Laws.  Borrower is in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency.

(g)    Subsidiaries and Partnerships.  Borrower has subsidiaries and may be a party to any partnership agreement or joint venture agreement.



6.  AFFIRMATIVE COVENANTS.  Borrower covenants with, and represents and warrants to, Lender that, from and after the execution date of the Loan Documents until the Obligations are paid and satisfied in full:

(a)  Access to Business Information.  Borrower shall maintain proper books of accounts and records and enter therein complete and accurate entries and records of all of its transactions in accordance with generally accepted accounting principles and give representatives of Lender access thereto at all reasonable times, including permission to: (a) examine, copy and make abstracts from any such books and records and such other information which might be helpful to  Lender in evaluating the status of the Obligations as it may reasonably request from time to time, and (b) communicate directly with any of Borrower's officers, employees, agents, accountants or other financial advisors with respect to the business, financial conditions and other affairs of the Borrower.

(b)  Financial Statements.  Borrower shall maintain a standard and modern system for accounting and shall furnish to Lender:

(i)  Within 120 days after the end of each fiscal year, a copy of Borrower's internally prepared consolidated financial statements for that year in a form reasonably acceptable to Lender, prepared and certified as complete and correct by the principal financial officer of Borrower;

(ii)  With the statements submitted above, a certificate signed by the principal financial officer of Borrower, (i) stating he is familiar with all documents relating to Lender and that no Event of Default specified herein, nor any event which upon notice or lapse of time, or both would constitute such an Event of Default, has occurred, or if any such condition or event existed or exists, specifying it and describing what action Borrower has taken or proposes to take with respect thereto, and (ii) setting forth, in summary form, figures showing the financial status of Borrower in respect of the financial restrictions contained herein;

(iii)  Immediately upon any officer of Borrower obtaining knowledge of any condition or event which constitutes or, after notice or lapse of time or both, would constitute an Event of Default, a certificate of such person specifying the nature and period of the existence thereof, and what action Borrower has taken or is taking or proposes to take in respect thereof;

All of the statements referred to in (i) above shall be in conformance with generally accepted accounting principles and give representatives of Lender access thereto at all reasonable times, including permission to examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the loans as it may reasonably request from time to time.

If at any time Borrower has any additional subsidiaries which have financial statements that could be consolidated with those of Borrower under generally accepted accounting principles, the financial statements required by subsections (i) above shall be the financial statements of Borrower and all such subsidiaries prepared on a consolidated basis.

(c)  Taxes.  Borrower shall pay when due all taxes, assessments and other governmental charges imposed upon it or its assets, franchises, business, income or profits before any penalty or interest accrues thereon (provided, however, that extensions for filing and payment of such taxes shall be permitted hereunder if disclosed to and consented to by Lender), and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith, if Lender is notified in advance of such contest and if Borrower establishes an adequate reserve or other appropriate provision required by generally accepted accounting principles and deposits with Lender cash or bond in an amount acceptable to Lender.

(d)  Existence; Business.  Borrower shall (a) maintain its existence as a corporation, (b) continue to engage primarily in business of the same general character as that now conducted, and (c) refrain from entering into any lines of business substantially different from the business or activities in which Borrower is presently engaged.



(e)     <u>Compliance with Laws.</u>  Borrower shall comply with all federal, state and local laws, regulations and orders applicable to Borrower or its assets including but not limited to all Environmental Laws, in all respects material to Borrower's business, assets or prospects and shall immediately notify Lender of any violation of any rule, regulation, statute, ordinance, order or law relating to the public health or the environment and of any complaint or notifications received by Borrower regarding to any environmental or safety and health rule, regulation, statute, ordinance or law.  Borrower shall obtain and maintain any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business and as may be required from time to time by applicable law.

(f)     <u>Notice of Default.</u>  Borrower shall, within ten (10) days of its knowledge thereof, give written notice to Lender of: (a) the occurrence of any event or the existence of any condition which would be, after notice or lapse of applicable grace periods, an Event of Default, and (b) the occurrence of any event or the existence of any condition which would prohibit or limit the ability of Borrower to reaffirm any of the representations or warranties, or to perform any of the covenants, set forth herein.

(g)     <u>Costs.</u>  Borrower shall reimburse Lender for any and all fees, costs and expenses including, without limitation, reasonable attorneys' fees, other professionals' fees, appraisal fees, environmental assessment fees (including Phase I and Phase II assessments), field exam audits, expert fees, court costs, litigation and other expenses (collectively, the "Costs") incurred or paid by Lender or any of its officers, employees or agents in connection with: (a) the preparation, negotiation, procurement, review, administration or enforcement of the Loan Documents or any instrument, agreement, document, policy, consent, waiver, subordination, release of lien, termination statement, satisfaction of mortgage, financing statement or other lien search, recording or filing related thereto (or any amendment, modification or extension to, or any replacement or substitution for, any of the foregoing), whether or not any particular portion of the transactions contemplated during such negotiations is ultimately consummated, and (b) the defense, preservation and protection of Lender's rights and remedies thereunder, including without limitation, its security interest in the Collateral or any other property pledged to secure the Loans, whether incurred in bankruptcy, insolvency, foreclosure or other litigation or proceedings or otherwise.  The Costs shall be due and payable upon demand by Lender.  If Borrower fails to pay the Costs when upon such demand, Lender is entitled to disburse such sums as Obligations.  Thereafter, the Costs shall bear interest from the date incurred or disbursed at the highest rate set forth in the Note(s).  This provision shall survive the termination of this Agreement and/or the repayment of any amounts due or the performance of any Obligation.

(h)     <u>Other Amounts Deemed Loans.</u>  If Borrower fails to pay any tax, assessment, governmental charge or levy or to maintain insurance within the time permitted or required by this Note, or to discharge any Lien prohibited hereby, or to comply with any other Obligation, Lender may, but shall not be obligated to, pay, satisfy, discharge or bond the same for the account of Borrower.  To the extent permitted by law and at the option of Lender, all monies so paid by Lender on behalf of Borrower shall be deemed Obligations and Borrower's payments under this Note may be increased to provide for payment of such Obligations plus interest thereon.

(i)     <u>Further Assurances.</u>  Borrower shall execute, acknowledge and deliver, or cause to be executed, acknowledged or delivered, any and all such further assurances and other agreements or instruments, and take or cause to be taken all such other action, as shall be reasonably necessary from time to time to give full effect to the Loan Documents and the transactions contemplated thereby.

7.     <u>NEGATIVE COVENANTS.</u>  Borrower covenants with, and represents and warrants to, Lender that, from and after the execution date hereof until the Obligations are paid and satisfied in full:

(a)     <u>Merger; Disposition of Assets.</u>  Borrower shall not (a) change its capital structure, (b) merge or consolidate with any entity, (c) amend or change its articles of incorporation and code of regulations or by-laws or (d) sell, lease, transfer or otherwise dispose of, or grant any person an option to acquire, or sell and leaseback, all or any substantial portion of its assets, whether now owned or hereafter acquired, except for bona fide sales of Inventory in the ordinary course of business and dispositions of property which is obsolete and not used or useful in its business.



8.    DEFINITIONS.    Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document.    All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles.    All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument. The following definitions are used herein:

(a)    "Lien" means any security interest, mortgage, pledge, assignment, lien or other encumbrance of any kind, including interests of vendors or lessors under conditional sale contracts or capital leases.

(b)    "Loan Documents" means any and all Rate Management Agreements and each and every document or agreement executed by any party evidencing, guarantying or securing any of the Obligations; and "Loan Document" means any one of the Loan Documents.

(c)    "Obligation(s)" means all loans, advances, indebtedness and each and every other obligation or liability of Borrower owed to each of Lender and/or any affiliate of Fifth Third Bancorp, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every obligation or liability arising under the loan document, any and all Rate Management Obligations (as defined in the Loan Documents), letters of credit now or hereafter issued by Lender or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, and agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications and restatements thereof, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing.

(d)    "Rate Management Agreement" means any agreement, device or arrangement providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, or equity prices, including, but not limited to, dollar-denominated or cross-currency interest rate exchange agreements, forward currency exchange agreements, interest rate cap or collar protection agreements, forward rate currency or interest rate options, puts and warrants, and any agreement pertaining to equity derivative transactions (e.g., equity or equity index swaps, options, caps, floors, collars and forwards), including without limitation any ISDA Master Agreement between Borrower and Lender or any affiliate of Fifth Third Bancorp, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time.

(e)    "Rate Management Obligations" means any and all obligations of Borrower to Lender or any affiliate of Fifth Third Bancorp, whether absolute, contingent or otherwise and howsoever and whensoever (whether now or hereafter) created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefore), under or in connection with (i) any and all Rate Management Agreements, and (ii) any and all cancellations, buy backs, reversals, terminations or assignments of any Rate Management Agreement.

9.    EVENTS OF DEFAULT.    Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, cease making advances and declare this Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto:

(a)    Any failure to make any payment when due of principal or accrued interest on this Note or any other Obligation and such nonpayment remains uncured for a period of 10 days thereafter.



(b)    Any representation or warranty of Borrower set forth in this Note or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, this Note or any other Obligation shall be materially inaccurate or misleading.

(c)    Borrower shall fail to observe or perform any other term or condition of this Note or any other term or condition set forth in any agreement, instrument, document, certificate or financial statement evidencing, guarantying or otherwise related to this Note or any other Obligation, or Borrower shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for a period of 30 days.

(d)    The death, legal incompetence or dissolution of Borrower or of any endorser or guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing.

(e)    Any failure to submit to Lender current financial information upon request.

(f)    The creation of any Lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or guarantor hereof including, without limitation, any property deposited with Lender.

(g)    In the judgment of Lender, any material adverse change occurs in the existing or prospective financial condition of Borrower that may affect the ability of Borrower to repay the Obligations.

(h)    A commencement by the Borrower or any endorser or guarantor of the Obligations of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower or any endorser or guarantor of the Obligations in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower or any endorser or guarantor of the Obligations, or for any substantial part of the property of Borrower or any endorser or guarantor of the Obligations, or ordering the wind-up or liquidation of the affairs of Borrower or any endorser or guarantor of the Obligations; or the filing and pendency for 30 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower or any endorser or guarantor of the Obligations of any general assignment for the benefit of creditors; or the failure of the Borrower or any endorser or guarantor of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower or any endorser or guarantor of the Obligations in furtherance of any of the foregoing.

(i)    Nonpayment by the Borrower of any Rate Management Obligation when due or the breach by the Borrower of any term, provision or condition contained in any Rate Management Agreement.

10.    REMEDIES.  After the occurrence of an Event of Default, Lender may at its option at any time, without notice, proceed to enforce and protect its rights hereunder by an action at law or in equity or by any other appropriate proceedings; provided that this Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.  Borrower shall pay all costs of collection incurred by Lender, including its attorney's fees, if this Note is referred to an attorney for collection, whether or not payment is obtained before entry of judgment.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order.  No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver.  No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy.  No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.



11. <u>LATE PAYMENTS; DEFAULT RATE; FEES.</u> If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After an Event of Default, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the Interest Rate by three percentage points (3%) (the "Default Rate"), whichever is greater. Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

12. <u>ENTIRE AGREEMENT.</u> Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

13. <u>SEVERABILITY.</u> The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

14. <u>ASSIGNMENT.</u> Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

15. <u>MODIFICATION; WAIVER OF LENDER.</u> The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co- borrower, endorser or guarantor or (ii) any of its rights against any co- borrower, guarantor or endorser.

16. <u>WAIVER OF BORROWER.</u> Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof. Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of Collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC"). Such waiver is entered to the full extent permitted by Section 3-605 (i) of the UCC.

17. <u>GOVERNING LAW; CONSENT TO JURISDICTION.</u> This Note is delivered in, is intended to be performed in, will be construed and enforceable in accordance with and governed by the internal laws of, the State of Illinois, without regard to principles of conflicts of law. Borrower agrees that the state and federal courts in the County where the Lender is located shall have exclusive jurisdiction over all matters arising out of this Note, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

18. <u>JURY WAIVER.</u> **BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

19. <u>WARRANT OF ATTORNEY.</u> Borrower authorizes any attorney of record to appear for it in any court of record in the State of Illinois, after maturity of this Note, whether by its terms or upon default, acceleration or otherwise, to waive the issuance and service of process, and release all errors, and to confess judgment against it in favor of Lender for the principal sum due herein together with interest, charges, court costs and attorneys' fees. Stay of execution and all exemptions are hereby waived. If this Note or any Obligation is referred to an attorney for collection, and the payment is obtained without the entry of a judgment, the obligors shall pay to the holder of such obligations its attorneys' fees. EACH OF BORROWER AND ANY ENDORSER OR ANY GUARANTOR AGREES THAT AN ATTORNEY WHO IS COUNSEL TO LENDER OR ANY OTHER HOLDER OF SUCH OBLIGATION MAY ALSO ACT AS ATTORNEY OF RECORD FOR BORROWER WHEN TAKING THE ACTIONS DESCRIBED ABOVE IN THIS PARAGRAPH. BORROWER AGREES THAT ANY ATTORNEY TAKING SUCH ACTIONS MAY BE PAID FOR THOSE SERVICES BY LENDER OR HOLDER OF SUCH OBLIGATION. BORROWER WAIVES ANY CONFLICT OF INTEREST THAT MAY BE CREATED BECAUSE THE ATTORNEY REPRESENTING THE BORROWER IS BEING PAID BY LENDER OR THE HOLDER OF SUCH OBLIGATION.



BORROWER:

Thrush Investment Company, Inc., an Illinois corporation

By: _____
(Authorized Signer)

David L. Chase, President/CEO _____
(Print Name and Title)



08CV2497 J. N.
JUDGE KENNELLY
MAG. JUDGE ASHMAN

## Continuing Guaranty Agreement

THIS CONTINUING GUARANTY AGREEMENT (the "Guaranty") made as of May 15, 2007 by and between George H. Thrush, III, an individual residing at 2104 N. Cleveland, Chicago, Illinois 60614 (the "Guarantor") and Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp ("Beneficiary").

### W I T N E S S E T H :

WHEREAS, Beneficiary has agreed to extend credit and financial accommodations to Thrush Investment Company, Inc., an Illinois corporation ("Investment"), Thrush Lexerd, Inc., an Illinois corporation ("Lexerd"), and Thrush Prairie Park, Inc., an Illinois corporation ("Prairie Park") (Investment, Lexerd and Prairie Park are referred to together as "Borrower"), pursuant to the Revolving Note, dated March 14, 2007, executed by Investment and made payable to the order of Beneficiary and the Amended and Restated Term Note dated May 15, 2007, executed by Borrower and made payable to the order of Beneficiary (collectively, the "Notes"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Loan Documents"); and

WHEREAS, Guarantor is affiliated with Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Guaranty in order to induce Beneficiary to enter into such transaction.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, Guarantor hereby guarantees, promises and undertakes as follows:

1.    GUARANTY.

(a)    Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Beneficiary the full and prompt payment and performance when due (whether at maturity by acceleration or otherwise) of any and all loans, advances, indebtedness and each and every other obligation or liability of Investment, Lexerd, Prairie Park or Borrower owed to Beneficiary and any affiliate of Fifth Third Bancorp, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Beneficiary or owed to others and acquired by Beneficiary by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every other obligation or liability arising under the Loan Documents, letters of credit now or hereafter issued by Beneficiary or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, any and all Rate Management Obligations (as defined in the Loan Documents), and all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Beneficiary or any affiliate of Fifth Third Bancorp under this Guaranty or any other document, instrument or agreement related to any of the foregoing (collectively, the "Obligations"). Notwithstanding the foregoing, the liability of Guarantor to Beneficiary hereunder is hereby expressly limited to 25.00% of the then outstanding amount of the

EXHIBIT B

Obligations, plus accrued interest on such amount and any and all reasonable and out of pocket expenses and attorneys' fees incurred by Beneficiary under this Guaranty (the "Maximum Amount").

(b)    This Guaranty is a continuing guaranty of payment, and not merely of collection, that shall remain in full force and effect until expressly terminated in writing by Beneficiary, notwithstanding the fact that no Obligations may be outstanding from time to time. Such termination by Beneficiary shall be applicable only to transactions having their inception after the effective date thereof, and shall not affect the enforceability of this Guaranty with regard to any Obligations arising out of transactions having their inception prior to such effective date, even if such Obligations shall have been modified, renewed, compromised, extended, otherwise amended or performed by Beneficiary subsequent to such termination. In the absence of any termination of this Guaranty as provided above, Guarantor agrees that Guarantor's obligations hereunder shall not be deemed discharged or satisfied until the Obligations are fully paid and performed, and no such payments or performance with regard to the Obligations is subject to any right on the part of any person whomsoever, including but not limited to any trustee in bankruptcy, to recover any of such payments. If any such payments are so set aside or settled without litigation, all of which is within Beneficiary's discretion, Guarantor shall be liable for the full amount Beneficiary is required to repay, plus reasonable and out of pocket costs, interest, reasonable attorneys' fees and any and all expenses that Beneficiary paid or incurred in connection therewith. A successor of Borrower, including Borrower in its capacity as debtor in a bankruptcy reorganization case, shall not be considered to be a different person than Borrower; and this Guaranty shall apply to all Obligations incurred by such successor.

(c)    Guarantor agrees that Guarantor is directly and primarily liable to Beneficiary and that the Obligations hereunder are independent of the Obligations of Borrower, or of any other guarantor and, moreover, that any payment by Borrower or any such guarantor shall not reduce the Maximum Amount of the liability of Guarantor to Beneficiary under this Guaranty. The liability of Guarantor hereunder shall survive discharge or compromise of any Obligation of Borrower in bankruptcy or otherwise. Beneficiary shall not be required to prosecute or seek to enforce any remedies against Borrower or any other party liable to Beneficiary on account of the Obligations, or to seek to enforce or resort to any remedies with respect to any collateral granted to Beneficiary by Borrower or any other party on account of the Obligations, as a condition to payment or performance by Guarantor under this Guaranty.

(d)    Beneficiary may, without notice or demand and without affecting its rights hereunder, from time to time: (i) renew, extend, accelerate or otherwise change the amount of, the time for payment of, or other terms relating to, any or all of the Obligations, or otherwise modify, amend or change the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) take and hold collateral for the payment of the Obligations guaranteed hereby, and exchange, enforce, waive, and release any such collateral, and apply such collateral and direct the order or manner of sale thereof as Beneficiary in its discretion may determine. Accordingly, Guarantor hereby waives notice of any and all of the foregoing.

(e)    Guarantor hereby waives any and all defenses, counterclaims and off-sets of any kind or nature, whether legal or equitable, that may arise: (i) directly or indirectly from the present or future lack of validity, binding effect or enforceability of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) from Beneficiary's impairment of any collateral, including the failure to record or perfect the

Beneficiary's interest in the collateral, or (iii) by reason of any claim or defense based upon an election of remedies by Beneficiary in the event such election may, in any manner, impair, affect, reduce, release, destroy or extinguish any right of contribution or reimbursement of Guarantor, or any other rights of the Guarantor to proceed against any other guarantor, or against any other person or any collateral.

(f)     Guarantor hereby waives all presentments, demands for performance or payment, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default or nonpayment, notice of acceptance of this Guaranty, and notices of the existence, creation, or incurring of new or additional Obligations, and all other notices or formalities to which Guarantor may be entitled, and Guarantor hereby waives all suretyship defenses, including but not limited to all defenses set forth in the Uniform Commercial Code, as revised from time to time and in effect in the State of Illinois (the "UCC") to the full extent such a waiver is permitted thereby.

(g)     Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any legal or equitable right to recover from Borrower any sums paid by the Guarantor under the terms of this Guaranty, including without limitation all rights of subrogation and all other rights that would result in Guarantor being deemed a creditor of Borrower under the federal Bankruptcy Code or any other law.  Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any right to assert in any manner against Beneficiary any claim, defense, counterclaim and offset of any kind or nature, whether legal or equitable, that Guarantor may now or at any time hereafter have against Borrower or any other party liable to Beneficiary.

2.     REPRESENTATIONS, WARRANTIES AND COVENANTS. Guarantor hereby represents, warrants and covenants as follows:

(a)     The execution, delivery and performance by Guarantor of this Guaranty shall not violate any provision of law or regulation applicable to Guarantor, or any writ or decree of any court or governmental instrumentality, or any instrument or agreement to which Guarantor is a party or by which Guarantor may be bound; this Guaranty is a legal, valid, and binding obligation of said Guarantor, enforceable in accordance with its terms; and there is no action or proceeding before any court or governmental body agency now pending that may materially adversely affect the condition (financial or otherwise) of Guarantor.

(b)     Upon request of Beneficiary, copies of all federal, state and local income tax returns and such other information as Beneficiary may reasonably request.

3.     EVENTS OF DEFAULT. Any of the following occurrences shall constitute an "Event of Default" under this Guaranty:

(a)     An Event of Default occurs under the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, as "Event of Default" shall be defined therein.

(b)     Guarantor shall fail to observe or perform any covenant, condition, or agreement under this Guaranty for a period of thirty (30) days from the date of such breach, or any representation or warranty of Guarantor set forth in this Guaranty shall be materially inaccurate or misleading when made or delivered.

(c)     The death or legal incompetence of Guarantor, or of any endorser or other guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing; provided, however, that the death of the Guarantor shall not be deemed an Event of Default hereunder if a substitute guarantor of the Obligations reasonably satisfactory to Beneficiary executes and delivers a continuing guaranty agreement substantially similar to this Guaranty within 60 days of the death of the Guarantor.

(d)     The default by Guarantor under the terms of any indebtedness of Guarantor now or hereafter existing, which default is material to Guarantor's financial condition and which has not been cured within any time period permitted pursuant to the terms and conditions of such indebtedness or the occurrence of an event which gives any creditor the right to accelerate the maturity of any such indebtedness.

(e)     The commencement by Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of Guarantor or for any substantial part of Guarantor's property, or ordering the wind-up or liquidation of Guarantor's affairs; or the filing and pendency for 60 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Guarantor of any general assignment for the benefit of creditors; or the failure of Guarantor generally to pay Guarantor's debts as such debts become due; or the taking of action by Guarantor in furtherance of any of the foregoing.

(f)     The revocation or attempted revocation of this Guaranty by Guarantor before the termination of this Guaranty in accordance with its terms, or the assignment or attempted assignment of this Guaranty by Guarantor.

4.          REMEDIES.

(a)     Whenever any Event of Default as defined herein shall have happened, Beneficiary, in its sole discretion, may take any remedial action permitted by law or in equity or by the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, including demanding payment in full of all sums guaranteed hereby, plus any accrued interest or other expenses.

(b)     If Beneficiary should employ attorneys or incur other expenses for the enforcement of this Guaranty, Guarantor, on demand therefor, shall reimburse the reasonable fees of such attorneys and such other expenses to the extent permitted by law.

(c)     No remedy set forth herein is exclusive of any other available remedy or remedies, but each is cumulative and in addition to every other remedy given under this Guaranty or now or hereafter existing at law or in equity or by statute. No delay or omission on the part of Beneficiary to exercise any right or remedy shall be construed to be a waiver thereof, but any such right or remedy may be exercised from time to time and as often as may be deemed expedient thereby, and a waiver on any one occasion shall be limited to that particular occasion.

5.     FINANCIAL CONDITION OF BORROWER. Guarantor is presently informed of the financial condition of Borrower and of all other circumstances that a diligent inquiry would reveal and which would bear upon the risk of nonpayment of any of the Obligations. Guarantor hereby covenants that Guarantor shall continue to keep informed of such matters, and hereby waives Guarantor's right, if any, to require Beneficiary to disclose any present or future information concerning such matters including, but not limited to, the release of or revocation by any other guarantor.

6.     SUBORDINATION. All indebtedness and liability now or hereafter owing by Borrower to Guarantor is hereby postponed and subordinated to the Obligations owing to Beneficiary; and such indebtedness and liability to Guarantor, if Beneficiary so requests, shall be collected, enforced and received by Guarantor as trustee for Beneficiary and be paid over to Beneficiary on account of the Obligations.

7.     NOTICES. Any notices under or pursuant to this Guaranty shall be deemed duly sent when delivered in hand or when mailed by registered or certified mail, return receipt requested, addressed as follows:

|  |  |
|---|---|
| To Guarantor: | George H. Thrush, III<br>2104 N. Cleveland Avenue,<br>Chicago, Illinois 60614 |
| To Beneficiary: | Fifth Third Bank<br>222 South Riverside Plaza<br>Chicago, Illinois 60606 Cook<br>County, Illinois |

Either party may change such address by sending notice of the change to the other party.

8.     MISCELLANEOUS.

(a)     This Guaranty may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

(b)     This Guaranty is the complete agreement of the parties hereto and supersedes all previous understandings and agreements relating to the subject matter hereof. Neither this Guaranty nor any of the terms hereof may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing signed by the party against whom enforcement of the termination, amendment, supplement, waiver or modification is sought.

(c)     As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

(d)     This Guaranty shall inure to the benefit of Beneficiary's successors and assigns and shall be binding upon the heirs, executors, administrators and successors of Guarantor. This Guaranty is not assignable by Guarantor.

(e)     If any provision of this Guaranty or the application thereof to any person or circumstance is held invalid, the remainder of this Guaranty and the application thereof to other

persons or circumstances shall not be affected thereby.

(f)     This Guaranty shall be governed by and construed in accordance with the law of the State of Illinois. Guarantor agrees that the state and federal courts for the County in which the Beneficiary is located or any other court in which Beneficiary initiates proceedings have exclusive jurisdiction over all matters arising out of this Guaranty.

(g)     GUARANTOR AND BENEFICIARY HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING IN CONNECTION WITH THIS GUARANTY OR THE TRANSACTIONS RELATED THERETO.

(h)     This Guaranty is accepted in substitution of a prior Continuing Guaranty Agreement dated as of October 15, 2006 made by Guarantor for the benefit of the Beneficiary ("2006 Guaranty"), which 2006 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Revolving Note dated August 1, 2006 made by Investment to the order of Beneficiary and a portion of the liabilities under that certain Term Note dated October 15, 2006 made by Investment to the order of Beneficiary. Guarantor has also executed and delivered to Beneficiary that Commercial Guaranty dated as of July 15, 2003 made by Guarantor for the benefit of the Beneficiary ("2003 Guaranty"), which 2003 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Promissory Note dated as of July 15, 2003 made by Investment to the order of Beneficiary. By its acceptance of this Guaranty, Beneficiary agrees that the 2006 Guaranty and the 2003 Guaranty are released, cancelled and terminated and that Beneficiary shall have no right to claim against Guarantor under either the 2006 Guaranty or the 2003 Guaranty.

*(Signatures continue on attached page)*

IN WITNESS WHEREOF, Guarantor and Beneficiary have caused this Guaranty to be executed as of the date first above written.

**FIFTH THIRD BANK**

By: _____

Name: Jerry Vye

Title: Portfolio Manager

_____

Name: George H. Thrush, III

08CV2497    J. N.
JUDGE KENNELLY
MAG. JUDGE ASHMAN

**Continuing Guaranty Agreement**

THIS CONTINUING GUARANTY AGREEMENT (the "Guaranty") made as of May 15, 2007 by and between David L. Chase, an individual residing at 1356 West Adams, Chicago, Cook County, Illinois 60607 (the "Guarantor") and Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp ("Beneficiary").

W I T N E S S E T H :

WHEREAS, Beneficiary has agreed to extend credit and financial accommodations to Thrush Investment Company, Inc., an Illinois corporation ("Investment"), Thrush Lexerd, Inc., an Illinois corporation ("Lexerd"), and Thrush Prairie Park, Inc., an Illinois corporation ("Prairie Park") (Investment, Lexerd and Prairie Park are referred to together as "Borrower"), pursuant to the Revolving Note, dated March 14, 2007, executed by Investment and made payable to the order of Beneficiary and the Amended and Restated Term Note dated May 15, 2007, executed by Borrower and made payable to the order of Beneficiary (collectively, the "Notes"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Loan Documents"); and

WHEREAS, Guarantor is affiliated with Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Guaranty in order to induce Beneficiary to enter into such transaction.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, Guarantor hereby guarantees, promises and undertakes as follows:

1.    <u>GUARANTY.</u>

(a)    Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Beneficiary the full and prompt payment and performance when due (whether at maturity by acceleration or otherwise) of any and all loans, advances, indebtedness and each and every other obligation or liability of Investment, Lexerd, Prairie Park or Borrower owed to Beneficiary and any affiliate of Fifth Third Bancorp, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Beneficiary or owed to others and acquired by Beneficiary by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every other obligation or liability arising under the Loan Documents, letters of credit now or hereafter issued by Beneficiary or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, any and all Rate Management Obligations (as defined in the Loan Documents), and all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Beneficiary or any affiliate of Fifth Third Bancorp under this Guaranty or any other document, instrument or agreement related to any of the foregoing (collectively, the "Obligations"). Notwithstanding the foregoing, the liability of Guarantor to Beneficiary hereunder is hereby expressly limited to 25.00% of the then outstanding amount of the

EXHIBIT C

Obligations, plus accrued interest on such amount and any and all reasonable and out of pocket expenses and attorneys' fees incurred by Beneficiary under this Guaranty (the "Maximum Amount").

(b)    This Guaranty is a continuing guaranty of payment, and not merely of collection, that shall remain in full force and effect until expressly terminated in writing by Beneficiary, notwithstanding the fact that no Obligations may be outstanding from time to time. Such termination by Beneficiary shall be applicable only to transactions having their inception after the effective date thereof, and shall not affect the enforceability of this Guaranty with regard to any Obligations arising out of transactions having their inception prior to such effective date, even if such Obligations shall have been modified, renewed, compromised, extended, otherwise amended or performed by Beneficiary subsequent to such termination. In the absence of any termination of this Guaranty as provided above, Guarantor agrees that Guarantor's obligations hereunder shall not be deemed discharged or satisfied until the Obligations are fully paid and performed, and no such payments or performance with regard to the Obligations is subject to any right on the part of any person whomsoever, including but not limited to any trustee in bankruptcy, to recover any of such payments. If any such payments are so set aside or settled without litigation, all of which is within Beneficiary's discretion, Guarantor shall be liable for the full amount Beneficiary is required to repay, plus reasonable and out of pocket costs, interest, reasonable attorneys' fees and any and all expenses that Beneficiary paid or incurred in connection therewith. A successor of Borrower, including Borrower in its capacity as debtor in a bankruptcy reorganization case, shall not be considered to be a different person than Borrower; and this Guaranty shall apply to all Obligations incurred by such successor.

(c)    Guarantor agrees that Guarantor is directly and primarily liable to Beneficiary and that the Obligations hereunder are independent of the Obligations of Borrower, or of any other guarantor and, moreover, that any payment by Borrower or any such guarantor shall not reduce the Maximum Amount of the liability of Guarantor to Beneficiary under this Guaranty. The liability of Guarantor hereunder shall survive discharge or compromise of any Obligation of Borrower in bankruptcy or otherwise. Beneficiary shall not be required to prosecute or seek to enforce any remedies against Borrower or any other party liable to Beneficiary on account of the Obligations, or to seek to enforce or resort to any remedies with respect to any collateral granted to Beneficiary by Borrower or any other party on account of the Obligations, as a condition to payment or performance by Guarantor under this Guaranty.

(d)    Beneficiary may, without notice or demand and without affecting its rights hereunder, from time to time: (i) renew, extend, accelerate or otherwise change the amount of, the time for payment of, or other terms relating to, any or all of the Obligations, or otherwise modify, amend or change the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) take and hold collateral for the payment of the Obligations guaranteed hereby, and exchange, enforce, waive, and release any such collateral, and apply such collateral and direct the order or manner of sale thereof as Beneficiary in its discretion may determine. Accordingly, Guarantor hereby waives notice of any and all of the foregoing.

(e)    Guarantor hereby waives any and all defenses, counterclaims and off-sets of any kind or nature, whether legal or equitable, that may arise: (i) directly or indirectly from the present or future lack of validity, binding effect or enforceability of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) from Beneficiary's impairment of any collateral, including the failure to record or perfect the

Beneficiary's interest in the collateral, or (iii) by reason of any claim or defense based upon an election of remedies by Beneficiary in the event such election may, in any manner, impair, affect, reduce, release, destroy or extinguish any right of contribution or reimbursement of Guarantor, or any other rights of the Guarantor to proceed against any other guarantor, or against any other person or any collateral.

(f)     Guarantor hereby waives all presentments, demands for performance or payment, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default or nonpayment, notice of acceptance of this Guaranty, and notices of the existence, creation, or incurring of new or additional Obligations, and all other notices or formalities to which Guarantor may be entitled, and Guarantor hereby waives all suretyship defenses, including but not limited to all defenses set forth in the Uniform Commercial Code, as revised from time to time and in effect in the State of Illinois (the "UCC") to the full extent such a waiver is permitted thereby.

(g)     Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any legal or equitable right to recover from Borrower any sums paid by the Guarantor under the terms of this Guaranty, including without limitation all rights of subrogation and all other rights that would result in Guarantor being deemed a creditor of Borrower under the federal Bankruptcy Code or any other law. Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any right to assert in any manner against Beneficiary any claim, defense, counterclaim and offset of any kind or nature, whether legal or equitable, that Guarantor may now or at any time hereafter have against Borrower or any other party liable to Beneficiary.

2.     REPRESENTATIONS, WARRANTIES AND COVENANTS. Guarantor hereby represents, warrants and covenants as follows:

(a)     The execution, delivery and performance by Guarantor of this Guaranty shall not violate any provision of law or regulation applicable to Guarantor, or any writ or decree of any court or governmental instrumentality, or any instrument or agreement to which Guarantor is a party or by which Guarantor may be bound; this Guaranty is a legal, valid, and binding obligation of said Guarantor, enforceable in accordance with its terms; and there is no action or proceeding before any court or governmental body agency now pending that may materially adversely affect the condition (financial or otherwise) of Guarantor.

(b)     Upon request of Beneficiary, copies of all federal, state and local income tax returns and such other information as Beneficiary may reasonably request.

3.     EVENTS OF DEFAULT. Any of the following occurrences shall constitute an "Event of Default" under this Guaranty:

(a)     An Event of Default occurs under the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, as "Event of Default" shall be defined therein.

(b)     Guarantor shall fail to observe or perform any covenant, condition, or agreement under this Guaranty for a period of thirty (30) days from the date of such breach, or any representation or warranty of Guarantor set forth in this Guaranty shall be materially inaccurate or misleading when made or delivered.

(c)     The death or legal incompetence of Guarantor, or of any endorser or other guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing; provided, however, that the death of the Guarantor shall not be deemed an Event of Default hereunder if a substitute guarantor of the Obligations reasonably satisfactory to Beneficiary executes and delivers a continuing guaranty agreement substantially similar to this Guaranty within 60 days of the death of the Guarantor.

(d)     The default by Guarantor under the terms of any indebtedness of Guarantor now or hereafter existing, which default is material to Guarantor's financial condition and which has not been cured within any time period permitted pursuant to the terms and conditions of such indebtedness or the occurrence of an event which gives any creditor the right to accelerate the maturity of any such indebtedness.

(e)     The commencement by Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of Guarantor or for any substantial part of Guarantor's property, or ordering the wind-up or liquidation of Guarantor's affairs; or the filing and pendency for 60 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Guarantor of any general assignment for the benefit of creditors; or the failure of Guarantor generally to pay Guarantor's debts as such debts become due; or the taking of action by Guarantor in furtherance of any of the foregoing.

(f)     The revocation or attempted revocation of this Guaranty by Guarantor before the termination of this Guaranty in accordance with its terms, or the assignment or attempted assignment of this Guaranty by Guarantor.

4.          <u>REMEDIES.</u>

(a)     Whenever any Event of Default as defined herein shall have happened, Beneficiary, in its sole discretion, may take any remedial action permitted by law or in equity or by the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, including demanding payment in full of all sums guaranteed hereby, plus any accrued interest or other expenses.

(b)     If Beneficiary should employ attorneys or incur other expenses for the enforcement of this Guaranty, Guarantor, on demand therefor, shall reimburse the reasonable fees of such attorneys and such other expenses to the extent permitted by law.

(c)     No remedy set forth herein is exclusive of any other available remedy or remedies, but each is cumulative and in addition to every other remedy given under this Guaranty or now or hereafter existing at law or in equity or by statute. No delay or omission on the part of Beneficiary to exercise any right or remedy shall be construed to be a waiver thereof, but any such right or remedy may be exercised from time to time and as often as may be deemed expedient thereby, and a waiver on any one occasion shall be limited to that particular occasion.

5.    FINANCIAL CONDITION OF BORROWER. Guarantor is presently informed of the financial condition of Borrower and of all other circumstances that a diligent inquiry would reveal and which would bear upon the risk of nonpayment of any of the Obligations. Guarantor hereby covenants that Guarantor shall continue to keep informed of such matters, and hereby waives Guarantor's right, if any, to require Beneficiary to disclose any present or future information concerning such matters including, but not limited to, the release of or revocation by any other guarantor.

6.    SUBORDINATION. All indebtedness and liability now or hereafter owing by Borrower to Guarantor is hereby postponed and subordinated to the Obligations owing to Beneficiary; and such indebtedness and liability to Guarantor, if Beneficiary so requests, shall be collected, enforced and received by Guarantor as trustee for Beneficiary and be paid over to Beneficiary on account of the Obligations.

7.    NOTICES. Any notices under or pursuant to this Guaranty shall be deemed duly sent when delivered in hand or when mailed by registered or certified mail, return receipt requested, addressed as follows:

> To Guarantor:        David L. Chase
>                      1356 West Adams Chicago,
>                      Illinois 60607 Cook County,
>                      Illinois
>
> To Beneficiary:      Fifth Third Bank
>                      222 South Riverside Plaza
>                      Chicago, Illinois 60606 Cook
>                      County, Illinois

Either party may change such address by sending notice of the change to the other party.

8.    MISCELLANEOUS.

(a)    This Guaranty may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

(b)    This Guaranty is the complete agreement of the parties hereto and supersedes all previous understandings and agreements relating to the subject matter hereof. Neither this Guaranty nor any of the terms hereof may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing signed by the party against whom enforcement of the termination, amendment, supplement, waiver or modification is sought.

(c)    As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

(d)    This Guaranty shall inure to the benefit of Beneficiary's successors and assigns and shall be binding upon the heirs, executors, administrators and successors of Guarantor. This Guaranty is not assignable by Guarantor.

(e)    If any provision of this Guaranty or the application thereof to any person or circumstance is held invalid, the remainder of this Guaranty and the application thereof to other

persons or circumstances shall not be affected thereby.

(f)    This Guaranty shall be governed by and construed in accordance with the law of the State of Illinois. Guarantor agrees that the state and federal courts for the County in which the Beneficiary is located or any other court in which Beneficiary initiates proceedings have exclusive jurisdiction over all matters arising out of this Guaranty.

(g)    GUARANTOR AND BENEFICIARY HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING IN CONNECTION WITH THIS GUARANTY OR THE TRANSACTIONS RELATED THERETO.

(h)    This Guaranty is accepted in substitution of a prior Continuing Guaranty Agreement dated as of October 15, 2006 made by Guarantor for the benefit of the Beneficiary ("2006 Guaranty"), which 2006 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Revolving Note dated August 1, 2006 made by Investment to the order of Beneficiary and a portion of the liabilities under that certain Term Note dated October 15, 2006 made by Investment to the order of Beneficiary. Guarantor has also executed and delivered to Beneficiary that Commercial Guaranty dated as of July 15, 2003 made by Guarantor for the benefit of the Beneficiary ("2003 Guaranty"), which 2003 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Promissory Note dated as of July 15, 2003 made by Investment to the order of Beneficiary. By its acceptance of this Guaranty, Beneficiary agrees that the 2006 Guaranty and the 2003 Guaranty are released, cancelled and terminated and that Beneficiary shall have no right to claim against Guarantor under either the 2006 Guaranty or the 2003 Guaranty.

*(Signatures continue on attached page)*

6

IN WITNESS WHEREOF, Guarantor and Beneficiary have caused this Guaranty to be executed as of the date first above written.

**FIFTH THIRD BANK**

By:_____
Name: Jerry Vye
Title: Portfolio Manager

_____
Name:  David L. Chase

08CV2497 J. N.

JUDGE KENNELLY

MAG. JUDGE ASHMAN

## Continuing Guaranty Agreement

THIS CONTINUING GUARANTY AGREEMENT (the "Guaranty") made as of May 15, 2007 by and between William J. Wolk, an individual residing at 2330 N. Kedzie Blvd., Chicago, Illinois 60647 (the "Guarantor") and Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp ("Beneficiary").

## W I T N E S S E T H :

WHEREAS, Beneficiary has agreed to extend credit and financial accommodations to Thrush Investment Company, Inc., an Illinois corporation ("Investment"), Thrush Lexerd, Inc., an Illinois corporation ("Lexerd"), and Thrush Prairie Park, Inc., an Illinois corporation ("Prairie Park") (Investment, Lexerd and Prairie Park are referred to together as "Borrower"), pursuant to the Revolving Note, dated March 14, 2007, executed by Investment and made payable to the order of Beneficiary and the Amended and Restated Term Note dated May 15, 2007, executed by Borrower and made payable to the order of Beneficiary (collectively, the "Notes"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Loan Documents"); and

WHEREAS, Guarantor is affiliated with Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Guaranty in order to induce Beneficiary to enter into such transaction.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, Guarantor hereby guarantees, promises and undertakes as follows:

1.     GUARANTY.

(a)     Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Beneficiary the full and prompt payment and performance when due (whether at maturity by acceleration or otherwise) of any and all loans, advances, indebtedness and each and every other obligation or liability of Investment, Lexerd, Prairie Park or Borrower owed to Beneficiary and any affiliate of Fifth Third Bancorp, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Beneficiary or owed to others and acquired by Beneficiary by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every other obligation or liability arising under the Loan Documents, letters of credit now or hereafter issued by Beneficiary or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, any and all Rate Management Obligations (as defined in the Loan Documents), and all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Beneficiary or any affiliate of Fifth Third Bancorp under this Guaranty or any other document, instrument or agreement related to any of the foregoing (collectively, the "Obligations"). Notwithstanding the foregoing, the liability of Guarantor to Beneficiary hereunder is hereby expressly limited to 25.00% of the then outstanding amount of the

EXHIBIT D

Obligations, plus accrued interest on such amount and any and all reasonable and out of pocket expenses and attorneys' fees incurred by Beneficiary under this Guaranty (the "Maximum Amount").

(b)    This Guaranty is a continuing guaranty of payment, and not merely of collection, that shall remain in full force and effect until expressly terminated in writing by Beneficiary, notwithstanding the fact that no Obligations may be outstanding from time to time. Such termination by Beneficiary shall be applicable only to transactions having their inception after the effective date thereof, and shall not affect the enforceability of this Guaranty with regard to any Obligations arising out of transactions having their inception prior to such effective date, even if such Obligations shall have been modified, renewed, compromised, extended, otherwise amended or performed by Beneficiary subsequent to such termination. In the absence of any termination of this Guaranty as provided above, Guarantor agrees that Guarantor's obligations hereunder shall not be deemed discharged or satisfied until the Obligations are fully paid and performed, and no such payments or performance with regard to the Obligations is subject to any right on the part of any person whomsoever, including but not limited to any trustee in bankruptcy, to recover any of such payments. If any such payments are so set aside or settled without litigation, all of which is within Beneficiary's discretion, Guarantor shall be liable for the full amount Beneficiary is required to repay, plus reasonable and out of pocket costs, interest, reasonable attorneys' fees and any and all expenses that Beneficiary paid or incurred in connection therewith. A successor of Borrower, including Borrower in its capacity as debtor in a bankruptcy reorganization case, shall not be considered to be a different person than Borrower; and this Guaranty shall apply to all Obligations incurred by such successor.

(c)    Guarantor agrees that Guarantor is directly and primarily liable to Beneficiary and that the Obligations hereunder are independent of the Obligations of Borrower, or of any other guarantor and, moreover, that any payment by Borrower or any such guarantor shall not reduce the Maximum Amount of the liability of Guarantor to Beneficiary under this Guaranty. The liability of Guarantor hereunder shall survive discharge or compromise of any Obligation of Borrower in bankruptcy or otherwise. Beneficiary shall not be required to prosecute or seek to enforce any remedies against Borrower or any other party liable to Beneficiary on account of the Obligations, or to seek to enforce or resort to any remedies with respect to any collateral granted to Beneficiary by Borrower or any other party on account of the Obligations, as a condition to payment or performance by Guarantor under this Guaranty.

(d)    Beneficiary may, without notice or demand and without affecting its rights hereunder, from time to time: (i) renew, extend, accelerate or otherwise change the amount of, the time for payment of, or other terms relating to, any or all of the Obligations, or otherwise modify, amend or change the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) take and hold collateral for the payment of the Obligations guaranteed hereby, and exchange, enforce, waive, and release any such collateral, and apply such collateral and direct the order or manner of sale thereof as Beneficiary in its discretion may determine. Accordingly, Guarantor hereby waives notice of any and all of the foregoing.

(e)    Guarantor hereby waives any and all defenses, counterclaims and off-sets of any kind or nature, whether legal or equitable, that may arise: (i) directly or indirectly from the present or future lack of validity, binding effect or enforceability of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) from Beneficiary's impairment of any collateral, including the failure to record or perfect the

Beneficiary's interest in the collateral, or (iii) by reason of any claim or defense based upon an election of remedies by Beneficiary in the event such election may, in any manner, impair, affect, reduce, release, destroy or extinguish any right of contribution or reimbursement of Guarantor, or any other rights of the Guarantor to proceed against any other guarantor, or against any other person or any collateral.

(f)     Guarantor hereby waives all presentments, demands for performance or payment, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default or nonpayment, notice of acceptance of this Guaranty, and notices of the existence, creation, or incurring of new or additional Obligations, and all other notices or formalities to which Guarantor may be entitled, and Guarantor hereby waives all suretyship defenses, including but not limited to all defenses set forth in the Uniform Commercial Code, as revised from time to time and in effect in the State of Illinois (the "UCC") to the full extent such a waiver is permitted thereby.

(g)     Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any legal or equitable right to recover from Borrower any sums paid by the Guarantor under the terms of this Guaranty, including without limitation all rights of subrogation and all other rights that would result in Guarantor being deemed a creditor of Borrower under the federal Bankruptcy Code or any other law.  Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any right to assert in any manner against Beneficiary any claim, defense, counterclaim and offset of any kind or nature, whether legal or equitable, that Guarantor may now or at any time hereafter have against Borrower or any other party liable to Beneficiary.

2.     REPRESENTATIONS, WARRANTIES AND COVENANTS. Guarantor hereby represents, warrants and covenants as follows:

(a)     The execution, delivery and performance by Guarantor of this Guaranty shall not violate any provision of law or regulation applicable to Guarantor, or any writ or decree of any court or governmental instrumentality, or any instrument or agreement to which Guarantor is a party or by which Guarantor may be bound; this Guaranty is a legal, valid, and binding obligation of said Guarantor, enforceable in accordance with its terms; and there is no action or proceeding before any court or governmental body agency now pending that may materially adversely affect the condition (financial or otherwise) of Guarantor.

(b)     Upon request of Beneficiary, copies of all federal, state and local income tax returns and such other information as Beneficiary may reasonably request.

3.     EVENTS OF DEFAULT. Any of the following occurrences shall constitute an "Event of Default" under this Guaranty:

(a)     An Event of Default occurs under the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, as "Event of Default" shall be defined therein.

(b)     Guarantor shall fail to observe or perform any covenant, condition, or agreement under this Guaranty for a period of thirty (30) days from the date of such breach, or any representation or warranty of Guarantor set forth in this Guaranty shall be materially inaccurate or misleading when made or delivered.

(c)    The death or legal incompetence of Guarantor, or of any endorser or other guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing; provided, however, that the death of the Guarantor shall not be deemed an Event of Default hereunder if a substitute guarantor of the Obligations reasonably satisfactory to Beneficiary executes and delivers a continuing guaranty agreement substantially similar to this Guaranty within 60 days of the death of the Guarantor.

(d)    The default by Guarantor under the terms of any indebtedness of Guarantor now or hereafter existing, which default is material to Guarantor's financial condition and which has not been cured within any time period permitted pursuant to the terms and conditions of such indebtedness or the occurrence of an event which gives any creditor the right to accelerate the maturity of any such indebtedness.

(e)    The commencement by Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of Guarantor or for any substantial part of Guarantor's property, or ordering the wind-up or liquidation of Guarantor's affairs; or the filing and pendency for 60 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Guarantor of any general assignment for the benefit of creditors; or the failure of Guarantor generally to pay Guarantor's debts as such debts become due; or the taking of action by Guarantor in furtherance of any of the foregoing.

(f)    The revocation or attempted revocation of this Guaranty by Guarantor before the termination of this Guaranty in accordance with its terms, or the assignment or attempted assignment of this Guaranty by Guarantor.

4.        REMEDIES.

(a)    Whenever any Event of Default as defined herein shall have happened, Beneficiary, in its sole discretion, may take any remedial action permitted by law or in equity or by the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, including demanding payment in full of all sums guaranteed hereby, plus any accrued interest or other expenses.

(b)    If Beneficiary should employ attorneys or incur other expenses for the enforcement of this Guaranty, Guarantor, on demand therefor, shall reimburse the reasonable fees of such attorneys and such other expenses to the extent permitted by law.

(c)    No remedy set forth herein is exclusive of any other available remedy or remedies, but each is cumulative and in addition to every other remedy given under this Guaranty or now or hereafter existing at law or in equity or by statute. No delay or omission on the part of Beneficiary to exercise any right or remedy shall be construed to be a waiver thereof, but any such right or remedy may be exercised from time to time and as often as may be deemed expedient thereby, and a waiver on any one occasion shall be limited to that particular occasion.

5.    FINANCIAL CONDITION OF BORROWER. Guarantor is presently informed of the financial condition of Borrower and of all other circumstances that a diligent inquiry would reveal and which would bear upon the risk of nonpayment of any of the Obligations. Guarantor hereby covenants that Guarantor shall continue to keep informed of such matters, and hereby waives Guarantor's right, if any, to require Beneficiary to disclose any present or future information concerning such matters including, but not limited to, the release of or revocation by any other guarantor.

6.    SUBORDINATION. All indebtedness and liability now or hereafter owing by Borrower to Guarantor is hereby postponed and subordinated to the Obligations owing to Beneficiary; and such indebtedness and liability to Guarantor, if Beneficiary so requests, shall be collected, enforced and received by Guarantor as trustee for Beneficiary and be paid over to Beneficiary on account of the Obligations.

7.    NOTICES. Any notices under or pursuant to this Guaranty shall be deemed duly sent when delivered in hand or when mailed by registered or certified mail, return receipt requested, addressed as follows:

|  |  |
|---|---|
| To Guarantor: | William J. Wolk<br>2330 N. Kedzie Blvd.<br>Chicago, Illinois 60647 |
| To Beneficiary: | Fifth Third Bank<br>222 South Riverside Plaza<br>Chicago, Illinois 60606 Cook<br>County, Illinois |

Either party may change such address by sending notice of the change to the other party.

8.    MISCELLANEOUS.

(a)    This Guaranty may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

(b)    This Guaranty is the complete agreement of the parties hereto and supersedes all previous understandings and agreements relating to the subject matter hereof. Neither this Guaranty nor any of the terms hereof may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing signed by the party against whom enforcement of the termination, amendment, supplement, waiver or modification is sought.

(c)    As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

(d)    This Guaranty shall inure to the benefit of Beneficiary's successors and assigns and shall be binding upon the heirs, executors, administrators and successors of Guarantor. This Guaranty is not assignable by Guarantor.

(e)    If any provision of this Guaranty or the application thereof to any person or circumstance is held invalid, the remainder of this Guaranty and the application thereof to other

5

persons or circumstances shall not be affected thereby.

     (f)     This Guaranty shall be governed by and construed in accordance with the law of the State of Illinois. Guarantor agrees that the state and federal courts for the County in which the Beneficiary is located or any other court in which Beneficiary initiates proceedings have exclusive jurisdiction over all matters arising out of this Guaranty.

     (g)     GUARANTOR AND BENEFICIARY HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING IN CONNECTION WITH THIS GUARANTY OR THE TRANSACTIONS RELATED THERETO.

     (h)     This Guaranty is accepted in substitution of a prior Continuing Guaranty Agreement dated as of October 15, 2006 made by Guarantor for the benefit of the Beneficiary ("2006 Guaranty"), which 2006 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Revolving Note dated August 1, 2006 made by Investment to the order of Beneficiary and a portion of the liabilities under that certain Term Note dated October 15, 2006 made by Investment to the order of Beneficiary. Guarantor has also executed and delivered to Beneficiary that Commercial Guaranty dated as of July 15, 2003 made by Guarantor for the benefit of the Beneficiary ("2003 Guaranty"), which 2003 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Promissory Note dated as of July 15, 2003 made by Investment to the order of Beneficiary. By its acceptance of this Guaranty, Beneficiary agrees that the 2006 Guaranty and the 2003 Guaranty are released, cancelled and terminated and that Beneficiary shall have no right to claim against Guarantor under either the 2006 Guaranty or the 2003 Guaranty.

*(Signatures continue on attached page)*

IN WITNESS WHEREOF, Guarantor and Beneficiary have caused this Guaranty to be executed as of the date first above written.

**FIFTH THIRD BANK**

By: _____

Name: Jerry Vye

Title: Portfolio Manager

_____

Name: William J. Wolk

**Continuing Guaranty Agreement**

THIS CONTINUING GUARANTY AGREEMENT (the "Guaranty") made as of May 15, 2007 by and between Richard H. Lillie, Jr., an individual residing at 3448 N. Greenview Avenue, Chicago, Illinois 60657 (the "Guarantor") and Fifth Third Bank, a Michigan banking corporation located at 222 South Riverside Plaza, Chicago, Cook County, Illinois 60606 for itself and as agent for any affiliate of Fifth Third Bancorp ("Beneficiary").

W I T N E S S E T H :

WHEREAS, Beneficiary has agreed to extend credit and financial accommodations to Thrush Investment Company, Inc., an Illinois corporation ("Investment"), Thrush Lexerd, Inc., an Illinois corporation ("Lexerd"), and Thrush Prairie Park, Inc., an Illinois corporation ("Prairie Park") (Investment, Lexerd and Prairie Park are referred to together as "Borrower"), pursuant to the Revolving Note, dated March 14, 2007, executed by Investment and made payable to the order of Beneficiary and the Amended and Restated Term Note dated May 15, 2007, executed by Borrower and made payable to the order of Beneficiary (collectively, the "Notes"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Loan Documents"); and

WHEREAS, Guarantor is affiliated with Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Guaranty in order to induce Beneficiary to enter into such transaction.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, Guarantor hereby guarantees, promises and undertakes as follows:

1.    GUARANTY.

(a)    Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Beneficiary the full and prompt payment and performance when due (whether at maturity by acceleration or otherwise) of any and all loans, advances, indebtedness and each and every other obligation or liability of Investment, Lexerd, Prairie Park or Borrower owed to Beneficiary and any affiliate of Fifth Third Bancorp, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Beneficiary or owed to others and acquired by Beneficiary by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every other obligation or liability arising under the Loan Documents, letters of credit now or hereafter issued by Beneficiary or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, any and all Rate Management Obligations (as defined in the Loan Documents), and all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Beneficiary or any affiliate of Fifth Third Bancorp under this Guaranty or any other document, instrument or agreement related to any of the foregoing (collectively, the "Obligations"). Notwithstanding the foregoing, the liability of Guarantor to Beneficiary hereunder is hereby expressly limited to 25.00% of the then outstanding amount of the

Obligations, plus accrued interest on such amount and any and all reasonable and out of pocket expenses and attorneys' fees incurred by Beneficiary under this Guaranty (the "Maximum Amount").

(b)      This Guaranty is a continuing guaranty of payment, and not merely of collection, that shall remain in full force and effect until expressly terminated in writing by Beneficiary, notwithstanding the fact that no Obligations may be outstanding from time to time. Such termination by Beneficiary shall be applicable only to transactions having their inception after the effective date thereof, and shall not affect the enforceability of this Guaranty with regard to any Obligations arising out of transactions having their inception prior to such effective date, even if such Obligations shall have been modified, renewed, compromised, extended, otherwise amended or performed by Beneficiary subsequent to such termination. In the absence of any termination of this Guaranty as provided above, Guarantor agrees that Guarantor's obligations hereunder shall not be deemed discharged or satisfied until the Obligations are fully paid and performed, and no such payments or performance with regard to the Obligations is subject to any right on the part of any person whomsoever, including but not limited to any trustee in bankruptcy, to recover any of such payments. If any such payments are so set aside or settled without litigation, all of which is within Beneficiary's discretion, Guarantor shall be liable for the full amount Beneficiary is required to repay, plus reasonable and out of pocket costs, interest, reasonable attorneys' fees and any and all expenses that Beneficiary paid or incurred in connection therewith. A successor of Borrower, including Borrower in its capacity as debtor in a bankruptcy reorganization case, shall not be considered to be a different person than Borrower; and this Guaranty shall apply to all Obligations incurred by such successor.

(c)      Guarantor agrees that Guarantor is directly and primarily liable to Beneficiary and that the Obligations hereunder are independent of the Obligations of Borrower, or of any other guarantor and, moreover, that any payment by Borrower or any such guarantor shall not reduce the Maximum Amount of the liability of Guarantor to Beneficiary under this Guaranty. The liability of Guarantor hereunder shall survive discharge or compromise of any Obligation of Borrower in bankruptcy or otherwise. Beneficiary shall not be required to prosecute or seek to enforce any remedies against Borrower or any other party liable to Beneficiary on account of the Obligations, or to seek to enforce or resort to any remedies with respect to any collateral granted to Beneficiary by Borrower or any other party on account of the Obligations, as a condition to payment or performance by Guarantor under this Guaranty.

(d)      Beneficiary may, without notice or demand and without affecting its rights hereunder, from time to time: (i) renew, extend, accelerate or otherwise change the amount of, the time for payment of, or other terms relating to, any or all of the Obligations, or otherwise modify, amend or change the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) take and hold collateral for the payment of the Obligations guaranteed hereby, and exchange, enforce, waive, and release any such collateral, and apply such collateral and direct the order or manner of sale thereof as Beneficiary in its discretion may determine. Accordingly, Guarantor hereby waives notice of any and all of the foregoing.

(e)      Guarantor hereby waives any and all defenses, counterclaims and off-sets of any kind or nature, whether legal or equitable, that may arise: (i) directly or indirectly from the present or future lack of validity, binding effect or enforceability of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, (ii) from Beneficiary's impairment of any collateral, including the failure to record or perfect the

Beneficiary's interest in the collateral, or (iii) by reason of any claim or defense based upon an election of remedies by Beneficiary in the event such election may, in any manner, impair, affect, reduce, release, destroy or extinguish any right of contribution or reimbursement of Guarantor, or any other rights of the Guarantor to proceed against any other guarantor, or against any other person or any collateral.

(f)     Guarantor hereby waives all presentments, demands for performance or payment, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default or nonpayment, notice of acceptance of this Guaranty, and notices of the existence, creation, or incurring of new or additional Obligations, and all other notices or formalities to which Guarantor may be entitled, and Guarantor hereby waives all suretyship defenses, including but not limited to all defenses set forth in the Uniform Commercial Code, as revised from time to time and in effect in the State of Illinois (the "UCC") to the full extent such a waiver is permitted thereby.

(g)     Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any legal or equitable right to recover from Borrower any sums paid by the Guarantor under the terms of this Guaranty, including without limitation all rights of subrogation and all other rights that would result in Guarantor being deemed a creditor of Borrower under the federal Bankruptcy Code or any other law. Unless and until the Obligations are paid in full, Guarantor agrees not to exercise any right to assert in any manner against Beneficiary any claim, defense, counterclaim and offset of any kind or nature, whether legal or equitable, that Guarantor may now or at any time hereafter have against Borrower or any other party liable to Beneficiary.

2.     REPRESENTATIONS, WARRANTIES AND COVENANTS. Guarantor hereby represents, warrants and covenants as follows:

(a)     The execution, delivery and performance by Guarantor of this Guaranty shall not violate any provision of law or regulation applicable to Guarantor, or any writ or decree of any court or governmental instrumentality, or any instrument or agreement to which Guarantor is a party or by which Guarantor may be bound; this Guaranty is a legal, valid, and binding obligation of said Guarantor, enforceable in accordance with its terms; and there is no action or proceeding before any court or governmental body agency now pending that may materially adversely affect the condition (financial or otherwise) of Guarantor.

(b)     Upon request of Beneficiary, copies of all federal, state and local income tax returns and such other information as Beneficiary may reasonably request.

3.     EVENTS OF DEFAULT. Any of the following occurrences shall constitute an "Event of Default" under this Guaranty:

(a)     An Event of Default occurs under the terms of the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, as "Event of Default" shall be defined therein.

(b)     Guarantor shall fail to observe or perform any covenant, condition, or agreement under this Guaranty for a period of thirty (30) days from the date of such breach, or any representation or warranty of Guarantor set forth in this Guaranty shall be materially inaccurate or misleading when made or delivered.

(c)     The death or legal incompetence of Guarantor, or of any endorser or other guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing; provided, however, that the death of the Guarantor shall not be deemed an Event of Default hereunder if a substitute guarantor of the Obligations reasonably satisfactory to Beneficiary executes and delivers a continuing guaranty agreement substantially similar to this Guaranty within 60 days of the death of the Guarantor.

(d)     The default by Guarantor under the terms of any indebtedness of Guarantor now or hereafter existing, which default is material to Guarantor's financial condition and which has not been cured within any time period permitted pursuant to the terms and conditions of such indebtedness or the occurrence of an event which gives any creditor the right to accelerate the maturity of any such indebtedness.

(e)     The commencement by Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of Guarantor or for any substantial part of Guarantor's property, or ordering the wind-up or liquidation of Guarantor's affairs; or the filing and pendency for 60 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Guarantor of any general assignment for the benefit of creditors; or the failure of Guarantor generally to pay Guarantor's debts as such debts become due; or the taking of action by Guarantor in furtherance of any of the foregoing.

(f)     The revocation or attempted revocation of this Guaranty by Guarantor before the termination of this Guaranty in accordance with its terms, or the assignment or attempted assignment of this Guaranty by Guarantor.

4.          REMEDIES.

(a)     Whenever any Event of Default as defined herein shall have happened, Beneficiary, in its sole discretion, may take any remedial action permitted by law or in equity or by the Loan Documents or any other document or instrument evidencing, securing or otherwise relating to the Obligations, including demanding payment in full of all sums guaranteed hereby, plus any accrued interest or other expenses.

(b)     If Beneficiary should employ attorneys or incur other expenses for the enforcement of this Guaranty, Guarantor, on demand therefor, shall reimburse the reasonable fees of such attorneys and such other expenses to the extent permitted by law.

(c)     No remedy set forth herein is exclusive of any other available remedy or remedies, but each is cumulative and in addition to every other remedy given under this Guaranty or now or hereafter existing at law or in equity or by statute. No delay or omission on the part of Beneficiary to exercise any right or remedy shall be construed to be a waiver thereof, but any such right or remedy may be exercised from time to time and as often as may be deemed expedient thereby, and a waiver on any one occasion shall be limited to that particular occasion.

5.    FINANCIAL CONDITION OF BORROWER. Guarantor is presently informed of the financial condition of Borrower and of all other circumstances that a diligent inquiry would reveal and which would bear upon the risk of nonpayment of any of the Obligations. Guarantor hereby covenants that Guarantor shall continue to keep informed of such matters, and hereby waives Guarantor's right, if any, to require Beneficiary to disclose any present or future information concerning such matters including, but not limited to, the release of or revocation by any other guarantor.

6.    SUBORDINATION. All indebtedness and liability now or hereafter owing by Borrower to Guarantor is hereby postponed and subordinated to the Obligations owing to Beneficiary; and such indebtedness and liability to Guarantor, if Beneficiary so requests, shall be collected, enforced and received by Guarantor as trustee for Beneficiary and be paid over to Beneficiary on account of the Obligations.

7.    NOTICES. Any notices under or pursuant to this Guaranty shall be deemed duly sent when delivered in hand or when mailed by registered or certified mail, return receipt requested, addressed as follows:

To Guarantor:         Richard H. Lillie, Jr.
                      3448 N. Greenview Avenue,
                      Chicago, Illinois 60657

                      Fifth Third Bank
To Beneficiary:       222 South Riverside Plaza
                      Chicago, Illinois 60606 Cook
                      County, Illinois

Either party may change such address by sending notice of the change to the other party.

8.    MISCELLANEOUS.

(a)    This Guaranty may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

(b)    This Guaranty is the complete agreement of the parties hereto and supersedes all previous understandings and agreements relating to the subject matter hereof. Neither this Guaranty nor any of the terms hereof may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing signed by the party against whom enforcement of the termination, amendment, supplement, waiver or modification is sought.

(c)    As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

(d)    This Guaranty shall inure to the benefit of Beneficiary's successors and assigns and shall be binding upon the heirs, executors, administrators and successors of Guarantor. This Guaranty is not assignable by Guarantor.

(e)    If any provision of this Guaranty or the application thereof to any person or circumstance is held invalid, the remainder of this Guaranty and the application thereof to other

persons or circumstances shall not be affected thereby.

(f)    This Guaranty shall be governed by and construed in accordance with the law of the State of Illinois. Guarantor agrees that the state and federal courts for the County in which the Beneficiary is located or any other court in which Beneficiary initiates proceedings have exclusive jurisdiction over all matters arising out of this Guaranty.

(g)    GUARANTOR AND BENEFICIARY HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING IN CONNECTION WITH THIS GUARANTY OR THE TRANSACTIONS RELATED THERETO.

(h)    This Guaranty is accepted in substitution of a prior Continuing Guaranty Agreement dated as of October 15, 2006 made by Guarantor for the benefit of the Beneficiary ("2006 Guaranty"), which 2006 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Revolving Note dated August 1, 2006 made by Investment to the order of Beneficiary and a portion of the liabilities under that certain Term Note dated October 15, 2006 made by Investment to the order of Beneficiary.  Guarantor has also executed and delivered to Beneficiary that Commercial Guaranty dated as of July 15, 2003 made by Guarantor for the benefit of the Beneficiary ("2003 Guaranty"), which 2003 Guaranty obligated Guarantor to pay a portion of the liabilities under that certain Promissory Note dated as of July 15, 2003 made by Investment to the order of Beneficiary.  By its acceptance of this Guaranty, Beneficiary agrees that the 2006 Guaranty and the 2003 Guaranty are released, cancelled and terminated and that Beneficiary shall have no right to claim against Guarantor under either the 2006 Guaranty or the 2003 Guaranty.

*(Signatures continue on attached page)*

IN WITNESS WHEREOF, Guarantor and Beneficiary have caused this Guaranty to be executed as of the date first above written.

**FIFTH THIRD BANK**

By: _____

Name: Jerry Vye

Title: Portfolio Manager

_____

Name:  Richard H. Lillie, Jr.